IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.                                                              Criminal No. 2:23-cr-00046

**TIMOTHY DUNCAN**

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Timothy Duncan, by his counsel, submits this Memorandum outlining the various 18 U.S.C. § 3553(a) factors for the Court's consideration at his upcoming November 15, 2023, sentencing hearing.

A. **Legal Objections:**

On August 28, 2023, this Court accepted Mr. Duncan's guilty plea to the offense of possession of child pornography. Mr. Duncan has no legal objections to the Probation Office's calculation of his total base offense level (24) or his criminal history score of one point. (PSR ¶¶ 32, 36). The advisory guideline range is 51 to 63 months and falls within Zone D of the Sentencing Table. Based upon his current indigent status, Mr. Duncan has objected to the imposition of the $5,000 special assessment. (PSR ¶ 99). The remaining objections set forth in the PSR Addendum pertain to factual matters which Mr. Duncan would request the Court to take into consideration for sentencing and require no further ruling.

Mr. Duncan has resolved the submitted restitution claim with the victim's representative for $3,500. (PSR ¶¶ 103, 115). The settlement includes an agreement

with the victim's representative that no post judgment interest will accrue on the restitution award.

## B. <ins>18 U.S.C. § 3553(a) Factors for Consideration:</ins>

The advisory guideline range for Mr. Duncan's case would seek to impose a term of imprisonment (51 to 63 months) that would be significantly greater than necessary for purposes of punishing Mr. Duncan for his criminal conduct. For example, the U.S.S.G. § 2G2.2 guideline calculation overlooks the following mitigating 18 U.S.C. § 3553(a) factors concerning:

(1) Mr. Duncan's personal history reflects that he has maintained meaningful employment during his life, has a relatively minor criminal record, and has strong family ties to the Charleston area;

(2) Mr. Duncan possessed a relatively small number of child pornography files and was not engaged in more serious conduct such as production of such materials and/or any improper solicitation for sex to any minor;

(3) The use of the U.S.S.G. § 2G2.2 guideline in child pornography cases results in an excessive offense level calculation where the majority of enhancements are not rationally based on any aggravating conduct and fail to distinguish between the culpability of offenders;

(4) Mr. Duncan's status within Criminal History Category I is an indication that he presents a low risk to reoffend in the future; and

(5) The Court's ability to closely monitor Mr. Duncan's activities during a lengthy term of supervised release that would include participation in a sex offender treatment program with polygraph testing, as well as other more stringent conditions over a longer period time than a typical federal offender.

Mr. Duncan would ask this Court to consider all of these factors to impose a variance sentence of a term of imprisonment of twenty-four months to be followed by

a ten-year term of supervised release. The extended period of supervised release will include several restrictive conditions set forth in the PSR which are tailored to monitor Mr. Duncan's progress towards rehabilitation. As such, the suggested sentence, which includes a longer term of post-release supervision, would strike an appropriate balance for imposing a sufficient, but not greater than necessary, punishment for Mr. Duncan's possession of child pornography files. Mr. Duncan would rely upon the following factors in support of this suggested sentence:

(1) Mr. Duncan's personal history and life experiences would support the requested variance. Mr. Duncan is 43 years old, single, and has lived most of his life in the Charleston area. He maintains close ties with his mother, with whom he is currently living, as well as a younger brother who lives in Dunbar. Mr. Duncan was the victim of sexual abuse as a minor which was never reported to law enforcement. (PSR ¶ 41). Mr. Duncan attended Capital High School but withdrew in the eleventh grade. (PSR ¶ 47). He has obtained his GED and has also completed some college courses at West Virginia State and Marshall University. *Id.* Upon completing any custody sentence, Mr. Duncan intends to try to finish his higher education and obtain a degree in behavioral addiction counseling at Bridge Valley.

For the past fifteen years, Mr. Duncan has maintained regular appointments with the oncology department at CAMC to monitor the status of the HIV virus in his body. Mr. Duncan is prescribed Genvoya, which is keeping his viral load as being undetectable and prevents his body from becoming a transmitter of the virus to

others. While Mr. Duncan is in BOP custody, he will need to have frequent blood tests to check on the status of the currently dormant HIV virus within his system.

Since obtaining his GED, Mr. Duncan has maintained steady employment to financially support himself through a variety of customer service related jobs. (PSR ¶ 48). The fact that Mr. Duncan has generally maintained meaningful employment throughout his life demonstrates that he is someone with a positive work ethic who can continue to be a contributing member to society. His last employment was with Highland Hospital, where he was a behavioral health technician. Mr. Duncan had to resign from this position due to his arrest and placement on home detention as a condition of his pretrial bond. During his time on home detention, Mr. Duncan has kept busy working on several remodeling projects at his mother's home. He has repainted the kitchen cabinets and the upstairs hallway, installed a laminated wood floor in the living room, and built a storage room in the basement.

Mr. Duncan has a minor criminal history with two prior misdemeanor convictions. Approximately seventeen years ago, Mr. Duncan pled guilty to an indecent exposure charge which resulted in a time served sentence to be followed by probation. Mr. Duncan's misdemeanor possession of one Xanax pill in 2015 resulted in no jail time and an imposed fine with court costs. Mr. Duncan is not someone who has had a past history of engaging in violence or committing any offenses involving minors. The offense of conviction represents Mr. Duncan's first felony conviction, and the custody sentence which this Court imposes will represent the longest time he has ever been incarcerated. This Court should consider that Mr. Duncan's limited

involvement with child pornography constitutes an aberration from what has otherwise been a life absent any ventures into any significant criminal conduct.

(2) The nature and circumstances concerning Mr. Duncan's limited involvement with child pornography warrant consideration for the proposed variance sentence. Mr. Duncan was an active user of Facebook and WhatsApp, two popular internet based social media forums. Mr. Duncan's interests were in adult pornography involving men, and he frequently received these types of videos from other like-minded users of Facebook and WhatsApp.

The August 12, 2022, CyberTipline report which started law enforcement's investigation indicated that Mr. Duncan had uploaded a video containing child pornography through Facebook Messenger. (PSR ¶ 6). This was the only instance that the CyberTipline reported Mr. Duncan as being involved in uploading any child pornography files. When Homeland Security executed a search warrant at Mr. Duncan's home on October 24, 2022, his Samsung Galaxy smartphone was the only device that possessed child pornography. (PSR ¶ 9). All of the data on the smartphone was set to automatically back up to Mr. Duncan's Google account, which is the reason why a number of contraband video files were later found in that account.

There was a relatively small amount of child pornography that could be viewed on Mr. Duncan's smartphone. The thirteen identified image files were not in any photo gallery and instead were located in cache folders automatically generated by the smartphone's Android operating system. The existence of these files demonstrates that the images were once present and that the smaller computer-

generated copies of those images resided in a hidden folder which required law enforcement to use forensic software to retrieve. Mr. Duncan did not have the means to view any of these cache files.

Mr. Duncan possessed a total of five original image files and seventeen original video files. Eight of the thirteen cache images were duplicates. Duplicate files were also found in six of the eighteen videos found on the smartphone and five of the ten videos in the Google account. Several of the identified videos were sent to Mr. Duncan by other WhatsApp users. The default settings for WhatsApp allowed for incoming files to be automatically downloaded without the user being able to prevent or initially screen the content which his smartphone was receiving.

Mr. Duncan was not involved in the actual production of any of the contraband content found on his smartphone or Google account. Mr. Duncan has never engaged in any sexually explicit chats with any minor in any internet social media forum. There has never been any allegation that Mr. Duncan has ever initiated any inappropriate contact with any minor in the community. As such, this Court should consider that Mr. Duncan's possession of a small amount of child pornography should place him at the lower end of the spectrum of severity for child pornography offenses.

(3) The Probation Officer's application of the U.S.S.G. § 2G2.2 guideline to Mr. Duncan's case would call for the imposition of a sentence between 51 to 63 months for someone who has committed his first federal felony offense. The requested variance takes into consideration that a number of courts, including this Court, have held that the U.S.S.G. § 2G2.2 guideline for child pornography offenses should be

afforded less deference than other guidelines. This particular guideline was <u>not</u> based upon the type of empirical data and national experience that the Sentencing Commission has relied upon in determining other sentencing guidelines.[1] These courts have recognized that the ordinary first-time offender likely qualifies for a sentence approaching the statutory maximum penalty based upon numerous enhancements which are inherent with the offense conduct. For the reasons more fully set forth below, Mr. Duncan would ask this Court to find that a strict application of the U.S.S.G. § 2G2.2 guideline is not warranted in this case.

In the past thirteen years, the U.S.S.G. § 2G2.2 guideline has been the subject of several reviews conducted by the Sentencing Commission. Public comments previously submitted by members of the federal judiciary demonstrated that the current guideline does not provide a reliable mechanism between distinguishing between first offenders and more serious offenders. The Sentencing Commission's

---

[1] *See U.S. v. Jenkins*, 854 F.3d 181 (2d Cir. 2017); *U.S. v. Henderson*, 649 F.3d 955 (9th Cir. 2011); *U.S. v. Dorvee*, 616 F.3d 174 (2d Cir. 2010); *U.S. v. Grober*, 624 F.3d 592 (3d Cir. 2010); *U.S. v. D.W.*, 198 F. Supp. 3d 18 (E.D.N.Y. 2016); *U.S. v. E.L.*, 188 F. Supp. 3d 152 (E.D.N.Y. 2016); *U.S. v. Pelloski*, 31 F. Supp. 3d 952 (S.D. Ohio 2014); *U.S. v. Nash*, 1 F. Supp. 3d 1240 (N.D. Ala, 2014); *U.S. v. Kelly*, 868 F. Supp. 2d 1202 (D.N.M. 2012); *U.S. v. Price*, 2012 U.S. Dist. Lexis 38397 (C.D. Ill. 2012); *U.S. v. Zapata*, 2011 U.S. Dist. Lexis 108813 (N.D. Ind. 2011); *U.S. v. C.R.*, 792 F. Supp. 2d 343 (E.D.N.Y. 2011); *U.S. v. Tews*, 2010 U.S. Dist. Lexis 48182 (E.D. Wis. 2010); *U.S. v. Howard*, 2010 U.S. Dist. Lexis 17740 (D.C. Neb. 2010); *U.S. v. Young*, 2010 U.S. Dist. Lexis 10086 (W.D. Mich. 2010); *U.S. v. Raby*, 2009 U.S. Dist. LEXIS 121836 (S.D. W. Va. 2009); *U.S. v. Cruikshank*, 667 F. Supp. 2d 697 (S.D. W. Va. 2009); *U.S. v. McElheney*, 630 F. Supp. 2d 886 (E.D. Tenn. 2009); *U.S. v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. Iowa, 2009); *U.S. v. Phinney*, 599 F. Supp. 2d 1037 (E.D. Wis. 2009); *U.S. v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008); *U.S. v. Johnson*, 588 F. Supp. 2d 997 (S.D. Iowa 2008); *U.S. v. Hanson*, 561 F. Supp. 2d 1004 (E.D. Wis. 2008); *U.S. v. Shipley*, 560 F. Supp. 2d 739 (S.D. Iowa 2008); *U.S. v. Baird*, 580 F. Supp. 2d 889, 895 (D. Neb 2008).

June 29, 2021, Report concluded that the offense level enhancements set forth in the U.S.S.G. § 2G2.2 guideline are no longer valid to distinguish between offenders in terms of the seriousness of the offense or the individual culpability of the offender.[2] Report at 68-69. Improvements in computer and internet technologies over the past twenty years have resulted in four of the six offense level enhancements under U.S.S.G. § 2G2.2 being routinely applied in every case. *Id.* at 68. The presence of these enhancements in the majority of cases is evidenced by the following data released by the Sentencing Commission for the 2019, 2020, and 2021 fiscal years:[3]

| § 2G2.2 Enhancements | 2019 | 2020 | 2021 |
| --- | --- | --- | --- |
| +2 (use of a computer) | 95.8% | 94.2% | 96.1% |
| +2 (possession of prepubescent minors) | 94.3% | 93.6% | 94.5% |
| +4 (S&M depictions)[4] | 81.5% | 81.5% | 81.8% |
| +5 (greater than 600 images) | 75.6% | 73.0% | 73.2% |

Three of the listed enhancements account for a nine-offense level increase in Mr. Duncan's base offense level calculation. The net impact of these cumulative enhancements escalates Mr. Duncan's total offense level by a factor of years.

---

[2] *See* U.S. Sentencing Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses* (June 2021) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf. Citations to the Commission's report will be made as "Report at #."

[3] Relevant pages concerning data pertaining to the U.S.S.G. § 2G2.2 offense level enhancements from the 2019, 2020, and 2021 *Use of Guidelines and Specific Offense Characteristics* published by the Sentencing Commission have been attached as Exhibit A.

[4] The U.S.S.G. § 2G2.2(b)(4) guideline was expanded in 2016 to include depictions of the sexual abuse of infants and toddlers as being sadistic and masochistic content.

The Commission recognized that 59% of the non-production child pornography offenders sentenced in fiscal year 2019 received a variance below the stated guideline range. *Id.* at 24. This figure suggests that the majority of district courts have found the U.S.S.G. § 2G2.2 guideline no longer worthy of deference. The Report renews the call previously made by the Commission in 2012 for Congress to revamp the U.S.S.G. § 2G2.2 guideline with enhancements which are based solely upon three categories related to the offender's conduct in the instant offense as well as the offender's history. These three categories for review include:

(1) The content of the defendant's collection and nature of collecting behavior;

(2) The degree of a defendant's involvement in an internet community devoted to child pornography; and

(3) The extent that a defendant engaged in sexually abusive or exploitative conduct prior to, or concurrently with, the instant offense.

Report at 28. The presence of aggravating factors within any of these three categories would warrant an enhanced punishment depending upon the degree that they are present in a particular case. A district court following this type of approach would no longer be bound to impose ubiquitous enhancements such as the use of a computer, possession of content containing pre-pubescent minors, or having more than 600 images which is presently an integral part of the U.S.S.G. § 2G2.2 guideline. If those enhancements were discounted for purposes of considering a variance sentence, Mr. Duncan's advisory guideline range would be significantly lower.

In evaluating the nature of an offender's collection, the Report suggested consideration of a number of quantifiable factors such as the number of still images and video files possessed, the age of the youngest depicted minor, the gender, the method of receiving, the method of distributing, the location where the files were stored and whether any sophisticated efforts were undertaken to conceal the offense conduct. Report at 29. The Commission noted that video files are more prevalent with today's child pornography offender than in 2012. *Id.* at 30. This is likely due to the fact that faster download speeds combined with larger hard drives has made it easier for offenders to download larger sized video files.

If the number of duplicate files is not considered, Mr. Duncan possessed five original image files and seventeen original video files. This is a limited amount of child pornography that would not have taken much time to obtain given Mr. Duncan's high internet access through Suddenlink (now Optimum). (PSR ¶ 8). While it is not unusual for video files to contain compilations of other videos, one of the video files was a compilation of 69 other videos. This particular file was different from the standpoint that when viewed there were three different videos containing scenes of child pornography all running at the same time for the majority of the video's duration. (PSR ¶ 9). That being the case, the number of contraband materials involved with Mr. Duncan's case would be in the lower end of files possessed by other offenders who have appeared before this Court.

With respect to the second category, the Commission recognized in 2012 that child pornography offenders tended to socialize with others on the Internet as a

means of obtaining contraband materials. The Report noted that 36.4% of possession offenders sentenced in fiscal year 2019 belonged to a "child pornography community." Report at 38. An offender's inclusion within the Commission's "child pornography community" can include any of the following conduct: participation in an online group whose members interact with each other over the Internet; conversing with another individual about child pornography or the sexual abuse of a minor; distributing or receiving child pornography by any personal means; or working with another individual to produce child pornography. *Id.*

While Mr. Duncan did receive some child pornography through WhatsApp, the majority of the videos that he possessed were adult pornography. There are no allegations in this case that Mr. Duncan was a member of any group on the internet which advocated the continued production and distribution of child pornography content. As such, there would be limited evidence that would support any enhancement under this category.

In regard to the third category, the Commission has recognized that sexually abusive or exploitative conduct involving minors provides a more effective means of distinguishing offenders based upon their culpability and level of dangerousness. Report at 44. This type of aggravating conduct can include contact and non-contact sex offenses and prior non-production child pornography offenses. Report at 40. This is not a factor as Mr. Duncan has no history of committing any sexual offenses against minors.

Should the Court consider the Sentencing Commission's recommendations for the appropriate enhancement factors, the suggested variance sentence of a term of imprisonment of twenty-four months to be followed by a ten-year period of supervised release would provide a sufficient punishment for Mr. Duncan's criminal conduct.

(4)   This Court should further consider the results of a social science study published in 2016 by the United States Probation and Pretrial Services to assess whether federal sex offenders were more likely to reengage in criminal activity during their period of supervised release.[5] The study undertaken by the Probation and Pretrial Services Offices comprised 7,416 male sex offenders who were on federal supervised release during the period between 2007 and 2013. Ex. B at 3.

At the start of any federal offender's term of supervised release, the offender undergoes a risk assessment test called the Post-Conviction Risk Assessment (PCRA) which the Probation Office uses to categorize offenders into risk levels of low, low/moderate, moderate, or high. Ex. B at 3. The study evaluated the male sex offender's PCRA score to see if it corresponded with his actual behavior while on supervision. A review of the PCRA scores for child pornography offenders showed that 77% of that group was categorized as "low risk" while only 31% of the non-sex offender population fell within that same category. Ex. B at 6, Fig. 1. For the male sex offender group whose PCRA scores placed them in the "low risk" category, only 6.7% of this group was subsequently arrested for a new charge while 5.5% of the group were subsequently revoked. Ex. B at 10, Fig. 4.

---

[5] *See* Thomas H. Cohen & Michelle C. Spidell, *How Dangerous Are They? An Analysis of Sex Offenders Under Federal Post-Conviction Supervision*, Federal Probation Journal (Sept. 2016), attached as Exhibit B.

12

This study compared the rate of recidivism over a three-year period for child pornography offenders with non-sex offenders. Ex. B at 7, Table 5. Only 4.9% of the child pornography offender group had incurred a "major arrest" during that time period as compared to an arrest rate of 23% for the non-sex offender group.[6] *Id.* The overall revocation rate for child pornography offenders was 11.6%, which was nearly half of the revocation rate of 22.6% for non-sex offenders. *Id.* Only 2.6% of the child pornography offender group had been subsequently arrested for a sex offense. *Id.* The authors of the study recognized that follow-up studies concerning the long-term arrest rates for sex offenders were needed given that the majority of federal sex offenders typically serve longer than three-year terms of supervised release. Ex. B at 11.

The figures from this study are encouraging in reflecting that child pornography offenders present lower PCRA scores, as well as lower risk to reoffend in the future, than persons convicted of all other types of federal offenses. The initial findings also show that child pornography offenders also present a relatively low risk to commit any future sex offense against another person. These results would further be consistent with recidivism data analyzed by the Sentencing Commission indicating that offenders within Criminal History Category I such as Mr. Duncan pose the lowest risk of recidivism.[7]

---

[6] A "major arrest" excluded consideration of any minor offense such as breach of the peace, invasion of privacy, prostitution, obstruction of justice, liquor law and traffic offenses. Ex. C at 7, Table 5.

[7] *See, e.g.,* U.S. Sentencing Comm'n, *Recidivism Among Federal Offenders: A Comprehensive Overview* 18 (March 2016),

(5) Several of the conditions for supervised release will ensure that Mr. Duncan does not return to the type of conduct which got him into trouble in this case. First, Mr. Duncan will be subject to undergoing a sex offender risk assessment upon release from custody and participating in a recommended sex offender treatment program which could last for several years. This program will be in addition to any similar program in which Mr. Duncan enrolls while in BOP custody. Mr. Duncan will be subject to bi-annual polygraph testing to ensure that he is complying with all of the conditions of his release. Mr. Duncan will only be permitted to have a smartphone upon the approval of his Probation Officer, and that privilege will come with limitations as to the types of internet sites that he can visit. A ten-year term of supervised release should be sufficient time for Mr. Duncan to demonstrate to the Court that he can successfully complete a sex offender treatment program and stay out of trouble for the remainder of his life.

The Court should further consider that this conviction carries significant collateral consequences for Mr. Duncan. The remainder of his life will always be shadowed by the stain of having a federal felony conviction for a child pornography offense. He will have to abide by the civil registration requirements as a sex offender.

Mr. Duncan acknowledges that he is in need of sex offender treatment counseling and would ask this Court for a designation recommendation that he be housed at FCI Elkton, a BOP facility which has a sex offender treatment program.

---

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

By being housed with other sex offenders, the risk of physical harm to Mr. Duncan is significantly reduced than if he were sent to a regular BOP facility.

Respectfully submitted this 9th day of November, 2023.

                                      **TIMOTHY DUNCAN**

                                      **By Counsel**

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/David R. Bungard**
David R. Bungard, Bar Number: 5739
Assistant Federal Public Defender
Office of the Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, West Virginia  25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail: david_bungard@fd.org